JS 44 CAND (Rev. 12/11)

# CIVIL COVER SHEET

ID 12-839 MEJ

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Melissa Barron, on behalf of herself and all others similarly situated

**(b)** County of Residence of First Listed Plaintiff  Alameda
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Gross Belsky Alonso LLP
One Sansome Street, Suite 3670
San Francisco, CA 94104; Tel: (415) 544-0200

## DEFENDANTS

Delphi Automotive LLP, Furukawa Electric Co., LTD., Lear Corp., Leoni AG, Sumitomo Electric Industries, LTD, S-Y Systems Technologies GMBH, Yazaki Corp., and Yazaki North America Inc.
County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:     IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION  *(Place an "X" in One Box Only)*

◻ 1  U.S. Government
Plaintiff

☒ 3 Federal Question
*(U.S. Government Not a Party)*

◻ 2  U.S. Government
Defendant

◻ 4  Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff)*
*(For Diversity Cases Only)* and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ◻ 1 | ◻ 1 | Incorporated *or* Principal Place of Business In This State | ◻ 4 | ◻ 4 |
| Citizen of Another State | ◻ 2 | ◻ 2 | Incorporated *and* Principal Place of Business In Another State | ◻ 5 | ◻ 5 |
| Citizen or Subject of a Foreign Country | ◻ 3 | ◻ 3 | Foreign Nation | ◻ 6 | ◻ 6 |

## IV. NATURE OF SUIT  *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ◻ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ◻ 625 Drug Related Seizure of Property 21 USC 881 | ◻ 422 Appeal 28 USC 158 | ☒ 375 False Claims Act |
| ◻ 120 Marine | ◻ 310 Airplane | ◻ 365 Personal Injury - Product Liability | ◻ 690 Other | ◻ 423 Withdrawal 28 USC 157 | ◻ 400 State Reapportionment |
| ◻ 130 Miller Act | ◻ 315 Airplane Product Liability | ◻ 367 Health Care/ | | | ☒ 410 Antitrust |
| ◻ 140 Negotiable Instrument | ◻ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ◻ 430 Banks and Banking |
| ◻ 150 Recovery of Overpayment & Enforcement of Judgment | ◻ 330 Federal Employers' Liability | Product Liability | | ◻ 820 Copyrights | ◻ 450 Commerce |
| ◻ 151 Medicare Act | ◻ 340 Marine | ◻ 368 Asbestos Personal Injury Product | | ◻ 830 Patent | ◻ 460 Deportation |
| ◻ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ◻ 345 Marine Product Liability | Liability | | ◻ 840 Trademark | ◻ 470 Racketeer Influenced and Corrupt Organizations |
| ◻ 153 Recovery of Overpayment of Veteran's Benefits | ◻ 350 Motor Vehicle | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ◻ 480 Consumer Credit |
| ◻ 160 Stockholders' Suits | ◻ 355 Motor Vehicle Product Liability | ◻ 370 Other Fraud | ◻ 710 Fair Labor Standards Act | ◻ 861 HIA (1395ff) | ◻ 490 Cable/Sat TV |
| ◻ 190 Other Contract | ◻ 360 Other Personal Injury | ◻ 371 Truth in Lending | ◻ 720 Labor/Mgmt. Relations | ◻ 862 Black Lung (923) | ◻ 850 Securities/Commodities/ Exchange |
| ◻ 195 Contract Product Liability | ◻ 362 Personal Injury - Med. Malpractice | ◻ 380 Other Personal Property Damage | ◻ 740 Railway Labor Act | ◻ 863 DIWC/DIWW (405(g)) | ◻ 890 Other Statutory Actions |
| ◻ 196 Franchise | | ◻ 385 Property Damage Product Liability | ◻ 751 Family and Medical Leave Act | ◻ 864 SSID Title XVI | ◻ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ◻ 790 Other Labor Litigation | ◻ 865 RSI (405(g)) | ◻ 893 Environmental Matters |
| ◻ 210 Land Condemnation | ◻ 440 Other Civil Rights | ◻ 510 Motions to Vacate Sentence | ◻ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ◻ 895 Freedom of Information Act |
| ◻ 220 Foreclosure | ◻ 441 Voting | **Habeas Corpus:** | | ◻ 870 Taxes (U.S. Plaintiff or Defendant) | ◻ 896 Arbitration |
| ◻ 230 Rent Lease & Ejectment | ◻ 442 Employment | ◻ 530 General | | ◻ 871 IRS—Third Party 26 USC 7609 | ◻ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ◻ 240 Torts to Land | ◻ 443 Housing/ Accommodations | ◻ 535 Death Penalty | **IMMIGRATION** | | ◻ 950 Constitutionality of State Statutes |
| ◻ 245 Tort Product Liability | ◻ 445 Amer. w/Disabilities - Employment | ◻ 540 Mandamus & Other | ◻ 462 Naturalization Application | | |
| ◻ 290 All Other Real Property | ◻ 446 Amer. w/Disabilities - Other | ◻ 550 Civil Rights | ◻ 463 Habeas Corpus - Alien Detainee (Prisoner Petition) | | |
| | ◻ 448 Education | ◻ 555 Prison Condition | ◻ 465 Other Immigration Actions | | |
| | | ◻ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN  *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding
◻ 2 Removed from State Court
◻ 3 Remanded from Appellate Court
◻ 4 Reinstated or Reopened
◻ 5 Transferred from another district *(specify)*
◻ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity):*
Sherman Act, 15 U.S.C. § 1
Brief description of cause:
Bid rigging and price fixing in violation of antitrust laws.

## VII. REQUESTED IN COMPLAINT:

☒ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes  ◻ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE  Hon. Yvonne Gonzalez Rogers

DOCKET NUMBER  CV 11:5301

## IX. DIVISIONAL ASSIGNMENT (Civil L.R. 3-2)
(Place an "X" in One Box Only)

☒ SAN FRANCISCO/OAKLAND  ◻ SAN JOSE  ◻ EUREKA

DATE  02/21/2012

SIGNATURE OF ATTORNEY OF RECORD

1 | Terry Gross, terry@gba-law.com (103878)
Adam C. Belsky, adam@gba-law.com (147800)
2 | Sarah Crowley, sarah@gba-law.com (273663)
GROSS BELSKY ALONSO LLP
3 | One Sansome Street, Suite 3670
San Francisco, CA 94104
4 | Telephone: (415) 544-0200
Facsimile: (415) 544-0201
5

6 | Attorneys for Plaintiff and the Proposed Class

7

8 | **UNITED STATES DISTRICT COURT**

9 | **NORTHERN DISTRICT OF CALIFORNIA**

10 | **SAN FRANCISCO DIVISION**

11 | MELISSA BARRON, on behalf of herself
and all others similarly situated,

Case No.

12 | Plaintiffs,

**INDIRECT-PURCHASER PLAINTIFFS'
CLASS ACTION COMPLAINT FOR
VIOLATIONS OF FEDERAL AND STATE
ANTITRUST LAWS, STATE CONSUMER
PROTECTION LAWS AND STATE
COMMON LAW OF UNJUST
ENRICHMENT**

13 | v.

14 |

15 | DELPHI AUTOMOTIVE LLP,
FURUKAWA ELECTRIC CO., LTD.,
16 | LEAR CORP., LEONI AG, SUMITOMO
ELECTRIC INDUSTRIES, LTD, S-Y
17 | SYSTEMS TECHNOLOGIES GMBH,
YAZAKI CORP., and YAZAKI NORTH
18 | AMERICA INC.,

**JURY TRIAL DEMANDED**

19 | Defendants.

20

21

22 |     Plaintiff Melissa Barron, on behalf of herself and the class defined below, brings this action

23 | for damages and injunctive relief against defendants Delphi Automotive LLP, Furukawa Electric

24 | Co., Ltd., Lear Corp., Leoni AG, Sumitomo Electric Industries, Ltd., S-Y Systems Technologies

25 | GmbH, Yazaki Corp., and Yazaki North America Inc., and alleges, upon personal knowledge as to

26 | her conduct, and upon information and belief as to all other matters based upon the investigation by

27 | her counsel, as follows:

28

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

1

## INTRODUCTION

2     1.    This class action arises out of a long-running conspiracy from at least January 1,
3 2000, through at least January 1, 2010, among Defendants and their co-conspirators, with the
4 purpose and effect of rigging bids for and fixing, raising, maintaining and stabilizing prices of
5 automotive wire harnesses and related products sold indirectly to plaintiff and other indirect
6 purchasers throughout the United States.

7     2.    Defendants and their co-conspirators formed an international cartel illegally to restrict
8 competition in the automotive wire harness and related products market, specifically targeting and
9 injuring indirect-purchaser consumers and affecting billions of dollars of commerce throughout the
10 United States. The conspiracy included communications and meetings in which defendants agreed to
11 eliminate competition and to rig bids for, and to fix the prices of automotive wire harnesses and
12 related products. As a result of Defendants' bid-rigging and price-fixing conduct, plaintiff and class
13 members have been injured in their business and property by paying more for automotive wire
14 harnesses and related products that they would otherwise have paid in the absence of defendants'
15 conspiracy.

16

## JURISDICTION AND VENUE

17     3.    This Court has original jurisdiction over this action under the provisions of 28 U.S.C.
18 § 1331 (federal question) and 28 U.S.C. § 1337 (original jurisdiction over any claims arising under
19 any Act of Congress regulating commerce or protecting trade and commerce against restraints and
20 monopolies), because the Complaint alleges violations of the Sherman Act, 15 U.S.C. § 1, and
21 Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26. The Court has supplemental
22 jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367, because those claims are so
23 related to Plaintiff's federal law claim that they form part of the same case or controversy. The
24 Court also has original jurisdiction over the entire action under 28 U.S.C. § 1332, because the
25 amount in controversy for the Class exceeds the sum or value of $5,000,000, exclusive and interest
26 and costs, and there are members of the Class who are citizens of a different state than Defendants,
27 and certain Defendants are citizens or subjects of foreign states.

28

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

1      4.      Venue is proper in this District under 15 U.S.C. §§ 15, 22, and 26, and 28 U.S.C.

2  § 1391(b) and (c), because Defendants reside, transact business, or are found within this District, and

3  a substantial part of the events giving rise to the claims arose in this District.

4      5.      Defendants conduct business throughout the United States, including in this

5  jurisdiction, and they purposefully avail themselves of the laws of the United States, including

6  specifically the laws of the state of California and the individual states listed herein. Defendants'

7  products are sold in the flow of interstate commerce, and Defendants' activities had a direct,

8  substantial, and reasonably-foreseeable effect on such commerce.

9      6.      Defendants' conspiracy to rig bids and fix prices of automotive wire harnesses and

10  related products substantially affected commerce throughout the United States and in each of the

11  states identified herein because Defendants, directly and/or through their agents, engaged in

12  activities affecting each state. Defendants have purposefully availed themselves of the laws of each

13  of the states identified herein in connection with their activities relating to the production, marketing,

14  and sale of wire harnesses. Defendants produced, promoted, sold, marketed, and or distributed

15  automotive wire harnesses and related products, thereby purposefully profiting from access to

16  consumers in each such state. As a result of the activities described herein, Defendants:  (a) caused

17  damage to the residents of the states identified herein; (b) caused damage in each of the states

18  identified herein by acts or omissions committed outside each such state and by regularly doing or

19  soliciting business in each such state; (c) engaged in persistent courses of conduct within each such

20  state and/or derived substantial revenue from the marketing of automotive wire harnesses and related

21  products (and services related to such marketing) in each such state; and (d) committed acts or

22  omissions that they knew or should have known would cause damage (and did, in fact, cause such

23  damages) in each such state while regularly doing or soliciting business in each such state, engaging

24  in other persistent courses of conduct in each such state, and/or deriving substantial revenue from the

25  marketing of automotive wire harnesses and related products in which they are used in each such

26  state.

27      7.      The conspiracy described herein adversely affected every person nationwide, and,

28  more particularly, consumers in each of the states identified in this Complaint who indirectly

1   purchased Defendants' automotive wire harnesses and related products. Defendants' conspiracy has
2   resulted in an adverse monetary effect on the class members of each state identified herein.

3       8.      Prices of automotive wire harnesses and related products in each state identified
4   herein were raised to supra-competitive levels by Defendants and their co-conspirators. Defendants
5   knew that commerce in automotive wire harness and related products, and that new motor vehicles
6   containing those harnesses and related products, would be adversely affected by implementing their
7   conspiracy in each state identified herein.

8                               **INTRADISTRICT ASSIGNMENT**

9       9.      Intradistrict assignment is proper in this Division because a substantial part of the
10  property that is the subject of this action is situated in, and a substantial part of the events or
11  omissions which give rise to the claim occurred in, the County of San Francisco.

12                                     **DEFINITIONS**

13      10.     "Automotive Wire Harness Systems" refers to automotive electrical distribution
14  systems used to direct and control electrical components, wiring, and circuit boards; and to related
15  products, including automotive electrical wiring, lead wire assemblies, cable band, automotive
16  wiring connectors, automotive wiring terminals, electronic control units, fuse boxes, relay boxes,
17  junction blocks, and power distributors.

18      11.     "Class Period" refers to the time period of January 1, 2000, to the date this Complaint
19  is filed.

20      12.     "OEM" means any original equipment manufacturer of new motor vehicles.

21                                     **THE PARTIES**

22  **A.      The Plaintiff**

23      12.     Plaintiff Melissa Barron is a resident of California, who indirectly purchased one or
24  more Automotive Wire Harness Systems manufactured and/or sold by one or more of the
25  Defendants during the Class Period, for end use and not for resale.  Plaintiff and all class members
26  were injured in their business or property as a result of Defendants' illegal bid-rigging and price-
27  fixing agreement because they paid more for products containing Automotive Wire Harness Systems
28  than they would have absent such illegal conduct.

1    **B.     The Defendants**

2        13.     Defendant Delphi Automotive LLP ("Delphi") is a Delaware corporation with its

3    principal place of business in Troy, Michigan.  Defendant Delphi manufactured, marketed, sold

4    and/or distributed Automotive Wire Harness Systems that were purchased throughout the United

5    States, including in this District, during the Class Period.

6        14.     Defendant Furukawa Electric Co., Ltd. ("Furukawa") is a Japanese corporation.

7    Defendant Furukawa manufactured, marketed, sold and/or distributed Automotive Wire Harness

8    Systems that were purchased throughout the United States, including in this District, during the

9    Class Period.

10        15.     Defendant Lear Corp. ("Lear") is a Delaware corporation with its principal place of

11   business in Southfield, Michigan.  Defendant Lear manufactured, marketed, sold and/or distributed

12   Automotive Wire Harness Systems that were purchased throughout the United States, including in

13   this District, during the Class Period.

14        16.     Defendant Leoni AG ("Leoni") is a German corporation.      Defendant Leoni

15   manufactured, marketed, sold and/or distributed Automotive Wire Harness Systems that were

16   purchased throughout the United States, including in this District, during the Class Period.

17        17.     Defendant Sumitomo Electric Industries, Ltd. ("Sumitomo") is a Japanese

18   corporation.   Defendant Sumitomo manufactured, marketed, sold and/or distributed Automotive

19   Wire Harness Systems that were purchased throughout the United States, including in this District,

20   during the Class Period.

21        18.     Defendant S-Y Systems Technologies, GmbH ("S-Y Systems") is a Japanese

22   corporation.  Defendant S-Y Systems manufactured, marketed, sold and/or distributed Automotive

23   Wire Harness Systems that were purchased throughout the United States, including in this District,

24   during the Class Period.

25        19.     Defendant Yazaki Corp. is a Japanese corporation.     Defendant Yazaki Corp.

26   manufactured, marketed, sold and/or distributed Automotive Wire Harness Systems that were

27   purchased throughout the United States, including in this District, during the Class Period.

28        20.     Defendant Yazaki North America Inc. is an Illinois corporation with its principal

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

1   place of business in Canton Township, Michigan. It is a subsidiary of and owned and controlled by

2   its parent, Yazaki Corp., and acts as the United States agent for the marketing sale and/or

3   distribution of Automotive Wire Harness Systems for its parent. (Yazaki Corp. and Yazaki North

4   America Inc. are collectively referred to herein as "Yazaki".)

5   **C.**   **The Co-Conspirators**

6      21.    Various persons and entities, presently unknown to Plaintiff, participated as co-

7   conspirators with Defendants in the violations alleged herein and have performed acts and made

8   statements in furtherance thereof. Plaintiff reserves the right to name some or all of these persons as

9   named Defendants or named Co-Conspirators at a later date.

10     22.    Whenever in this complaint reference is made to any act, deed or transaction of any

11   corporation, the allegation means that the corporation engaged in the act, deed or transaction by or

12   through its officers, directors, agents, employees or representatives while they were actively engaged

13   in the management, direction, control or transaction of the corporation's business or affairs.

14     23.    Each of the Defendants named herein acted as the agent of, co-conspirator with, or

15   joint venturer of the other Defendants with respect to the acts, violations and common course of

16   conduct alleged herein.

17            **EFFECTS ON INTERSTATE AND INTRASTATE COMMERCE**

18     24.    Defendants conduct business throughout the United States, including in the State of

19   California, and they have purposefully availed themselves of the laws of the United States.

20   Defendants' products are sold in the flow of interstate commerce and Defendants' activities had a

21   direct, substantial and reasonably foreseeable effect on such commerce.

22     25.    Defendants' conspiracy further substantially affected commerce in each of the states

23   identified herein. Defendants have purposefully availed themselves of the laws of each of the states

24   identified herein in connection with their activities relating to the pricing of Automotive Wire

25   Harness Systems. Defendants produced, promoted, sold, marketed, and/or distributed Automotive

26   Wire Harness Systems in each of the states identified herein, thereby purposefully profiting from

27   access to indirect purchasers in each such state. As a result of the activities described herein,

28   Defendants:

1.    Caused tortious damage to the residents of the states identified herein;

2.    Caused tortious damage in each of the states identified herein by acts or omissions committed outside each such state by regularly doing or soliciting business in each such state;

3.    Engaged in persistent courses of conduct within each such state and/or derived substantial revenue from the marketing of Automotive Wire Harness Systems in each such state (and services relating to such marketing); and

4.    Committed acts or omissions that they knew or should have known would cause damage (and did, in fact, cause such damage) in each such state while regularly doing or soliciting business in each such state, engaging in other persistent courses of conduct in each such state and/or deriving substantial revenue from the marketing of Automotive Wire Harness Systems (and services relating to such marketing) in each such state.

26.    The conspiracy described herein affected adversely every person in each of the states identified in this Complaint who indirectly bought Automotive Wire Harness Systems for end use and not for resale. Defendants' conspiracy has lasted for many years and resulted in monetary damages to purchasers in each state identified herein.

27.    Prices of Automotive Wire Harness Systems in each state can be manipulated by conspirators within that state, outside of it, or both. Without enforcing the antitrust and/or consumer protection laws of each of the states identified herein, companies that break the law will go unpunished. Defendants knew that commerce in each of the states identified herein would have to be adversely affected in order to implement their conspiracy.

## CLASS ACTION ALLEGATIONS

28.    Plaintiff brings this suit as a class action pursuant to Rules 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure, on behalf of herself and a Plaintiff Class ("the Class") composed of and defined as follows:

> All persons and entities residing in the United States who, during the Class Period, indirectly purchased Automotive Wire Harness Systems in the United States for their own use and not for resale (including as a stand-alone replacement product or as a component of a new motor vehicle that was

-7-

purchased or leased) from any Defendant or any current or former subsidiary of affiliate thereof, or any co-conspirator. Specifically excluded from this Class are the Defendants; the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant. Also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

29. Plaintiff also bring this action on her own behalf and as a class action pursuant to Rules 23 of the Federal Rules of Civil Procedure and/or respective state statute(s), on behalf of all members of the following classes (collectively, the "Indirect-Purchaser State Classes") with respect to claims under the antitrust and/or consumer protection statutes of each of those jurisdictions and under common law principles of unjust enrichment recognized in each of those jurisdictions:

1. **ARIZONA**: All persons and entities who, as residents of Arizona and during the Class Period, indirectly purchased Automotive Wire Harness Systems for their own use and not for resale (including as a stand-alone replacement product or as a component of a new motor vehicle that was purchased or leased) from any Defendant or any current or former subsidiary of affiliate thereof, or any co-conspirator. Specifically excluded from this Class are the Defendants, the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant. Also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action (the "Arizona Indirect Purchaser Class").

2. **CALIFORNIA**: All persons and entities who, as residents of California and during the Class Period, indirectly purchased Automotive Wire Harness Systems for their own use and not for resale (including as a stand-alone replacement product or as a component of a new motor vehicle that was purchased or leased) from any Defendant or any current or former subsidiary of affiliate thereof, or any co-conspirator. Specifically excluded from this Class are the Defendants, the officers, directors or employees of any

-8-

1
2
3
4
5
6

Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant. Also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action (the "California Indirect Purchaser Class").

7
8
9
10
11
12
13
14
15
16
17
18
19

3.      **DISTRICT OF COLUMBIA**: All persons and entities who, as residents of the District of Columbia and during the Class Period, indirectly purchased Automotive Wire Harness Systems for their own use and not for resale (including as a stand-alone replacement product or as a component of a new motor vehicle that was purchased or leased) from any Defendant or any current or former subsidiary of affiliate thereof, or any co-conspirator. Specifically excluded from this Class are the Defendants, the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant. Also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action (the "District of Columbia Indirect Purchaser Class").

20
21
22
23
24
25
26
27
28

4.      **FLORIDA**: All persons and entities who, as residents of Florida and during the Class Period, indirectly purchased Automotive Wire Harness Systems for their own use and not for resale (including as a stand-alone replacement product or as a component of a new motor vehicle that was purchased or leased) from any Defendant or any current or former subsidiary of affiliate thereof, or any co-conspirator. Specifically excluded from this Class are the Defendants, the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant. Also excluded are any federal,

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action (the "Florida Indirect Purchaser Class").

5. **HAWAII**: All persons and entities who, as residents of Hawaii and during the Class Period, indirectly purchased Automotive Wire Harness Systems for their own use and not for resale (including as a stand-alone replacement product or as a component of a new motor vehicle that was purchased or leased) from any Defendant or any current or former subsidiary of affiliate thereof, or any co-conspirator. Specifically excluded from this Class are the Defendants, the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant. Also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action (the "Hawaii Indirect Purchaser Class").

6. **IOWA**: All persons and entities who, as residents of Iowa and during the Class Period, indirectly purchased Automotive Wire Harness Systems for their own use and not for resale (including as a stand-alone replacement product or as a component of a new motor vehicle that was purchased or leased) from any Defendant or any current or former subsidiary of affiliate thereof, or any co-conspirator. Specifically excluded from this Class are the Defendants, the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant. Also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action (the "Iowa Indirect Purchaser Class").

7. **KANSAS**: All persons and entities who, as residents of Kansas and during the

-10-

1    Class Period, indirectly purchased Automotive Wire Harness Systems for their

2    own use and not for resale (including as a stand-alone replacement product or

3    as a component of a new motor vehicle that was purchased or leased) from

4    any Defendant or any current or former subsidiary of affiliate thereof, or any

5    co-conspirator. Specifically excluded from this Class are the Defendants, the

6    officers, directors or employees of any Defendant; any entity in which any

7    Defendant has a controlling interest; and any affiliate, legal representative,

8    heir or assign of any Defendant. Also excluded are any federal, state or local

9    governmental entities, any judicial officer presiding over this action and the

10   members of his/her immediate family and judicial staff, and any juror

11   assigned to this action (the "Kansas Indirect Purchaser Class").

12   8.    **MAINE**: All persons and entities who, as residents of Maine and during the

13   Class Period, indirectly purchased Automotive Wire Harness Systems for their

14   own use and not for resale (including as a stand-alone replacement product or

15   as a component of a new motor vehicle that was purchased or leased) from

16   any Defendant or any current or former subsidiary of affiliate thereof, or any

17   co-conspirator. Specifically excluded from this Class are the Defendants, the

18   officers, directors or employees of any Defendant; any entity in which any

19   Defendant has a controlling interest; and any affiliate, legal representative,

20   heir or assign of any Defendant. Also excluded are any federal, state or local

21   governmental entities, any judicial officer presiding over this action and the

22   members of his/her immediate family and judicial staff, and any juror

23   assigned to this action (the "Maine Indirect Purchaser Class").

24   9.    **MASSACHUSETTS**: All persons and entities who, as residents of

25   Massachusetts and during the Class Period, indirectly purchased Automotive

26   Wire Harness Systems for their own use and not for resale (including as a

27   stand-alone replacement product or as a component of a new motor vehicle

28   that was purchased or leased) from any Defendant or any current or former

-11-

subsidiary of affiliate thereof, or any co-conspirator. Specifically excluded from this Class are the Defendants, the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant. Also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action (the "Massachusetts Indirect Purchaser Class").

10. **MICHIGAN**: All persons and entities who, as residents of Michigan and during the Class Period, indirectly purchased Automotive Wire Harness Systems for their own use and not for resale (including as a stand-alone replacement product or as a component of a new motor vehicle that was purchased or leased) from any Defendant or any current or former subsidiary of affiliate thereof, or any co-conspirator. Specifically excluded from this Class are the Defendants, the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant. Also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action (the "Michigan Indirect Purchaser Class").

11. **MINNESOTA**: All persons and entities who, as residents of Minnesota and during the Class Period, indirectly purchased Automotive Wire Harness Systems for their own use and not for resale (including as a stand-alone replacement product or as a component of a new motor vehicle that was purchased or leased) from any Defendant or any current or former subsidiary of affiliate thereof, or any co-conspirator. Specifically excluded from this Class are the Defendants, the officers, directors or employees of any

1    Defendant; any entity in which any Defendant has a controlling interest; and

2    any affiliate, legal representative, heir or assign of any Defendant. Also

3    excluded are any federal, state or local governmental entities, any judicial

4    officer presiding over this action and the members of his/her immediate

5    family and judicial staff, and any juror assigned to this action (the "Minnesota

6    Indirect Purchaser Class").

7    12.   **MISSISSIPPI**: All persons and entities who, as residents of Mississippi and

8    during the Class Period, indirectly purchased Automotive Wire Harness

9    Systems for their own use and not for resale (including as a stand-alone

10    replacement product or as a component of a new motor vehicle that was

11    purchased or leased) from any Defendant or any current or former subsidiary

12    of affiliate thereof, or any co-conspirator. Specifically excluded from this

13    Class are the Defendants, the officers, directors or employees of any

14    Defendant; any entity in which any Defendant has a controlling interest; and

15    any affiliate, legal representative, heir or assign of any Defendant. Also

16    excluded are any federal, state or local governmental entities, any judicial

17    officer presiding over this action and the members of his/her immediate

18    family and judicial staff, and any juror assigned to this action (the

19    "Mississippi Indirect Purchaser Class").

20    13.   **MISSOURI**: All persons and entities who, as residents of Missouri and

21    during the Class Period, indirectly purchased Automotive Wire Harness

22    Systems for their own use and not for resale (including as a stand-alone

23    replacement product or as a component of a new motor vehicle that was

24    purchased or leased) from any Defendant or any current or former subsidiary

25    of affiliate thereof, or any co-conspirator. Specifically excluded from this

26    Class are the Defendants, the officers, directors or employees of any

27    Defendant; any entity in which any Defendant has a controlling interest; and

28    any affiliate, legal representative, heir or assign of any Defendant. Also

-13-

1  excluded are any federal, state or local governmental entities, any judicial

2  officer presiding over this action and the members of his/her immediate

3  family and judicial staff, and any juror assigned to this action (the "Missouri

4  Indirect Purchaser Class").

5  14.  **NEVADA**: All persons and entities who, as residents of Nevada and during

6  the Class Period, indirectly purchased Automotive Wire Harness Systems for

7  their own use and not for resale (including as a stand-alone replacement

8  product or as a component of a new motor vehicle that was purchased or

9  leased) from any Defendant or any current or former subsidiary of affiliate

10  thereof, or any co-conspirator. Specifically excluded from this Class are the

11  Defendants, the officers, directors or employees of any Defendant; any entity

12  in which any Defendant has a controlling interest; and any affiliate, legal

13  representative, heir or assign of any Defendant. Also excluded are any federal,

14  state or local governmental entities, any judicial officer presiding over this

15  action and the members of his/her immediate family and judicial staff, and

16  any juror assigned to this action (the "Nevada Indirect Purchaser Class").

17  15.  **NEW MEXICO**: All persons and entities who, as residents of New Mexico

18  and during the Class Period, indirectly purchased Automotive Wire Harness

19  Systems for their own use and not for resale (including as a stand-alone

20  replacement product or as a component of a new motor vehicle that was

21  purchased or leased) from any Defendant or any current or former subsidiary

22  of affiliate thereof, or any co-conspirator. Specifically excluded from this

23  Class are the Defendants, the officers, directors or employees of any

24  Defendant; any entity in which any Defendant has a controlling interest; and

25  any affiliate, legal representative, heir or assign of any Defendant. Also

26  excluded are any federal, state or local governmental entities, any judicial

27  officer presiding over this action and the members of his/her immediate

28  family and judicial staff, and any juror assigned to this action (the "New

-14-

1    Mexico Indirect Purchaser Class").

2    16.    **NEW YORK**: All persons and entities who, as residents of New York and

3    during the Class Period, indirectly purchased Automotive Wire Harness

4    Systems for their own use and not for resale (including as a stand-alone

5    replacement product or as a component of a new motor vehicle that was

6    purchased or leased) from any Defendant or any current or former subsidiary

7    of affiliate thereof, or any co-conspirator.  Specifically excluded from this

8    Class are the Defendants, the officers, directors or employees of any

9    Defendant; any entity in which any Defendant has a controlling interest; and

10    any affiliate, legal representative, heir or assign of any Defendant. Also

11    excluded are any federal, state or local governmental entities, any judicial

12    officer presiding over this action and the members of his/her immediate

13    family and judicial staff, and any juror assigned to this action (the "New York

14    Indirect Purchaser Class").

15    17.    **NORTH CAROLINA**: All persons and entities who, as residents of North

16    Carolina and during the Class Period, indirectly purchased Automotive Wire

17    Harness Systems for their own use and not for resale (including as a stand-

18    alone replacement product or as a component of a new motor vehicle that was

19    purchased or leased) from any Defendant or any current or former subsidiary

20    of affiliate thereof, or any co-conspirator.  Specifically excluded from this

21    Class are the Defendants, the officers, directors or employees of any

22    Defendant; any entity in which any Defendant has a controlling interest; and

23    any affiliate, legal representative, heir or assign of any Defendant. Also

24    excluded are any federal, state or local governmental entities, any judicial

25    officer presiding over this action and the members of his/her immediate

26    family and judicial staff, and any juror assigned to this action (the "North

27    Carolina Indirect Purchaser Class").

28    18.    **NORTH DAKOTA**: All persons and entities who, as residents of North

-15-

1   Dakota and during the Class Period, indirectly purchased Automotive Wire
2   Harness Systems for their own use and not for resale (including as a stand-
3   alone replacement product or as a component of a new motor vehicle that was
4   purchased or leased) from any Defendant or any current or former subsidiary
5   of affiliate thereof, or any co-conspirator. Specifically excluded from this
6   Class are the Defendants, the officers, directors or employees of any
7   Defendant; any entity in which any Defendant has a controlling interest; and
8   any affiliate, legal representative, heir or assign of any Defendant. Also
9   excluded are any federal, state or local governmental entities, any judicial
10  officer presiding over this action and the members of his/her immediate
11  family and judicial staff, and any juror assigned to this action (the "North
12  Dakota Indirect Purchaser Class").

13  19.  **OREGON**: All persons and entities who, as residents of Oregon and during
14  the Class Period, indirectly purchased Automotive Wire Harness Systems for
15  their own use and not for resale (including as a stand-alone replacement
16  product or as a component of a new motor vehicle that was purchased or
17  leased) from any Defendant or any current or former subsidiary of affiliate
18  thereof, or any co-conspirator. Specifically excluded from this Class are the
19  Defendants, the officers, directors or employees of any Defendant; any entity
20  in which any Defendant has a controlling interest; and any affiliate, legal
21  representative, heir or assign of any Defendant. Also excluded are any
22  federal, state or local governmental entities, any judicial officer presiding over
23  this action and the members of his/her immediate family and judicial staff,
24  and any juror assigned to this action (the "Oregon Indirect Purchaser Class").,

25  20.  **RHODE ISLAND**: All persons and entities who, as residents of Rhode Island
26  and during the Class Period, indirectly purchased Automotive Wire Harness
27  Systems for their own use and not for resale (including as a stand-alone
28  replacement product or as a component of a new motor vehicle that was

purchased or leased) from any Defendant or any current or former subsidiary of affiliate thereof, or any co-conspirator. Specifically excluded from this Class are the Defendants, the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant. Also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action (the "Rhode Island Indirect Purchaser Class").,

21. **SOUTH DAKOTA**: All persons and entities who, as residents of South Dakota and during the Class Period, indirectly purchased Automotive Wire Harness Systems for their own use and not for resale (including as a stand-alone replacement product or as a component of a new motor vehicle that was purchased or leased) from any Defendant or any current or former subsidiary of affiliate thereof, or any co-conspirator. Specifically excluded from this Class are the Defendants, the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant. Also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action (the "South Dakota Indirect Purchaser Class").

22. **TENNESSEE**: All persons and entities who, as residents of Tennessee and during the Class Period, indirectly purchased Automotive Wire Harness Systems for their own use and not for resale (including as a stand-alone replacement product or as a component of a new motor vehicle that was purchased or leased) from any Defendant or any current or former subsidiary of affiliate thereof, or any co-conspirator. Specifically excluded from this

-17-

1  Class are the Defendants, the officers, directors or employees of any

2  Defendant; any entity in which any Defendant has a controlling interest; and

3  any affiliate, legal representative, heir or assign of any Defendant. Also

4  excluded are any federal, state or local governmental entities, any judicial

5  officer presiding over this action and the members of his/her immediate

6  family and judicial staff, and any juror assigned to this action (the "Tennessee

7  Indirect Purchaser Class").,

8  23.  **VERMONT**: All persons and entities who, as residents of Vermont and

9  during the Class Period, indirectly purchased Automotive Wire Harness

10  Systems for their own use and not for resale (including as a stand-alone

11  replacement product or as a component of a new motor vehicle that was

12  purchased or leased) from any Defendant or any current or former subsidiary

13  of affiliate thereof, or any co-conspirator.  Specifically excluded from this

14  Class are the Defendants, the officers, directors or employees of any

15  Defendant; any entity in which any Defendant has a controlling interest; and

16  any affiliate, legal representative, heir or assign of any Defendant. Also

17  excluded are any federal, state or local governmental entities, any judicial

18  officer presiding over this action and the members of his/her immediate

19  family and judicial staff, and any juror assigned to this action (the "Vermont

20  Indirect Purchaser Class").,

21  24.  **WEST VIRGINIA**: All persons and entities who, as residents of West

22  Virginia and during the Class Period, indirectly purchased Automotive Wire

23  Harness Systems for their own use and not for resale (including as a stand-

24  alone replacement product or as a component of a new motor vehicle that was

25  purchased or leased) from any Defendant or any current or former subsidiary

26  of affiliate thereof, or any co-conspirator.  Specifically excluded from this

27  Class are the Defendants, the officers, directors or employees of any

28  Defendant; any entity in which any Defendant has a controlling interest; and

-18-

1    any affiliate, legal representative, heir or assign of any Defendant. Also

2    excluded are any federal, state or local governmental entities, any judicial

3    officer presiding over this action and the members of his/her immediate

4    family and judicial staff, and any juror assigned to this action (the "West

5    Virginia Indirect Purchaser Class").

6    25.    **WISCONSIN**: All persons and entities who, as residents of Wisconsin and

7    during the Class Period, indirectly purchased Automotive Wire Harness

8    Systems for their own use and not for resale (including as a stand-alone

9    replacement product or as a component of a new motor vehicle that was

10    purchased or leased) from any Defendant or any current or former subsidiary

11    of affiliate thereof, or any co-conspirator. Specifically excluded from this

12    Class are the Defendants, the officers, directors or employees of any

13    Defendant; any entity in which any Defendant has a controlling interest; and

14    any affiliate, legal representative, heir or assign of any Defendant. Also

15    excluded are any federal, state or local governmental entities, any judicial

16    officer presiding over this action and the members of his/her immediate

17    family and judicial staff, and any juror assigned to this action (the "Wisconsin

18    Indirect Purchaser Class").

19    30.    This action has been brought and may be properly maintained as a class action

20    pursuant to Rule 23 of the Federal Rules of Civil Procedure for the following reasons:

21    1.    The Class is ascertainable and there is a well-defined community of interest

22    among the members of the Class;

23    2.    Based upon the nature of the trade and commerce involved and the number of

24    indirect purchasers of Automotive Wire Harness Systems, Plaintiff believes

25    that the members of the Class number in the thousands, and therefore is

26    sufficiently numerous that joinder of all Class members is not practicable;

27    3.    Plaintiff's claims are typical of the claims of the members of the Class

28    because Plaintiff indirectly purchased Automotive Wire Harness Systems

-19-

from one or more of the Defendants or their co-conspirators, and therefore Plaintiff's claims arise from the same common course of conduct giving rise to the claims of the members of the Class and the relief sought is common to the Class;

4. The following common questions of law or fact, among others, exist as to the members of the Class:

    i.     whether Defendants formed and operated a combination or conspiracy to fix, raise, maintain or stabilize the prices of, or allocate the market for, Automotive Wire Harness Systems sold in the United States;

    ii.     whether the combination or conspiracy caused Automotive Wire Harness Systems prices to be higher than they would have been in the absence of Defendants' conduct;

    iii.     the operative time period of Defendants' combination or conspiracy;

    iv.     whether Defendants' conduct caused injury to the business or property of Plaintiff and the members of the Class;

    v.     the appropriate measure of the amount of damages suffered by the Class;

    vi.     whether Defendants' conduct violates Section 1 of the Sherman Act;

    vii.     whether Defendants' conduct violates Sections 16720 and 17200 of the California Business and Professions Code;

    viii.     whether Defendants' conduct violates the antitrust, unfair competition, and consumer protection laws of the other states as alleged below; and

    ix.     the appropriate nature of class-wide equitable relief.

5. These and other questions of law or fact which are common to the members of the Class predominate over any questions affecting only individual members of the Class;

6. After determination of the predominate common issues identified above, if necessary or appropriate, the Class can be divided into logical and manageable

1          subclasses;

2     7.   Plaintiff will fairly and adequately protect the interests of the Class in that

3          Plaintiff has no interests that are antagonistic to other members of the Class

4          and has retained counsel competent and experienced in the prosecution of

5          class actions and antitrust litigation to represent herself and the Class;

6     8.   A class action is superior to other available methods for the fair and efficient

7          adjudication of this litigation since individual joinder of all damaged Class

8          Members is impractical; the damages suffered by individual Class Members

9          are relatively small, thus, absent the availability of class action procedures, it

10         would not be feasible for Class Members to redress the wrongs done to them;

11    9.   Defendants have acted, and refused to act, on grounds generally applicable to

12         the Class, thereby making appropriate final injunctive relief with respect to the

13         Class as a whole; and

14    10.  In the absence of a class action, Defendants would be unjustly enriched

15         because they would be able to retain the benefits and fruits of their wrongful

16         conduct.

17    31.   The Claims in this case are also properly certifiable under the laws of the individual

18    states identified below in the Second and Third Claims for Relief.

19                          **FACTUAL ALLEGATIONS**

20    32.   This is a class action brought against Defendants Delphi, Furukawa, Lear, Leoni,

21    Sumitomo, S-Y Systems, and Yazaki, (collectively "Defendants"), the largest manufacturers and

22    sellers of automotive wire harnesses and related products, for engaging in a conspiracy to unlawfully

23    fix, stabilize, maintain, and raise the prices of Automotive Wire Harness Systems, as defined above,

24    sold to automobile manufacturers for installation in vehicles manufactured and sold in the United

25    States and elsewhere.

26    33.   Plaintiff seeks to represent consumers who purchased or leased new motor vehicles

27    containing Automotive Wire Harness Systems or who purchased replacement Automotive Wire

28    Harness Systems during the Class Period.

1     34.    Defendants manufacture, market, and sell Automotive Wire Harness Systems
2 throughout the United States for installation in vehicles manufactured and sold in the United States,
3 in Japan for export to the United States and installation in vehicles manufactured and sold in the
4 United States, and in Japan for installation in vehicles manufactured in Japan for export to and sale
5 in the United States.

6     35.    Defendants and their Co-Conspirators agreed, combined and conspired to rig bids for,
7 inflate, fix, raise, and artificially maintain and stabilize prices of Automotive Wire Harness Systems.

8     36.    Antitrust law enforcement authorities in the United States, the European Union, and
9 Japan have been investigating a conspiracy in the market for Automotive Wire Harness Systems. As
10 part of its ongoing criminal investigation, the United States Department of Justice ("DOJ") has
11 brought criminal charges against Defendant Furukawa and its employees and is investigating other
12 manufacturers of Automotive Wire Harness Systems. The Federal Bureau of Investigation ("FBI")
13 has participated in raids, pursuant to search warrants, carried out in at least some of Defendants'
14 offices. The European Commission Competition Authority ("Commission") has also conducted raids
15 at several Defendants' European offices.

16     37.    Defendant Furukawa and three of its employees have each pled guilty to a criminal
17 information brought by the United States, charging that, from at least as early as January 2000 and
18 continuing until at least January 2010 (for Furukawa), and varying time periods within that period
19 for the three employees, Furukawa, its employees, and its cococonspirators participated in a
20 combination and conspiracy to suppress and eliminate competition in the automotive parts industry
21 by agreeing to rig bids for, and to fix, stabilize, and maintain the prices of, Automotive Wire Harness
22 Systems sold to automobile manufacturers in the United States and elsewhere.

23     38.    As part of its plea agreement, Furukawa has agreed to assist the DOJ in its ongoing
24 criminal investigation into the automotive parts industry.

25     39.    As a direct result of the anti-competitive and unlawful conduct alleged herein,
26 Plaintiff and Class members, as defined below, paid artificially inflated prices for Automotive Wire
27 Harness Systems installed in their vehicles and Defendants were unjustly enriched during the Class
28 Period. Plaintiff and the class members have thereby suffered injury to their business or property.

**A.   Defendants' Wrongful Course of Conduct**

40.   Defendants supplied Automotive Wire Harness Systems to automobile manufacturers for installation in vehicles manufactured and sold in the United States and elsewhere.

41.   When purchasing Automotive Wire Harness Systems, automobile manufacturers issue Requests for Quotation ("RFQs") to automotive parts suppliers on a model-by-model basis for model-specific parts. Automotive parts suppliers submit quotations, or bids, to the automobile manufacturers in response to RFQs, and the automobile manufacturers award the business to the selected automotive parts supplier for the lifespan of the model, which is usually four to six years. Typically, the bidding process for a particular model begins approximately three years prior to the start of production. Japanese automobile manufacturers procure parts for vehicles manufactured in the United States both in Japan and in the United States.

42.   From at least as early as January 2000, and continuing until at least January 2010, the exact dates being unknown, Defendants and their Co-Conspirators participated in a combination and conspiracy to suppress and eliminate competition in the automotive parts industry by agreeing to rig bids for, and to fix, stabilize, and maintain the prices of, Automotive Wire Harness Systems sold to automobile manufacturers in the United States and elsewhere.  The combination and conspiracy was an unreasonable restraint of interstate and foreign trade and commerce.

43.   The combination and conspiracy consisted of a continuing agreement, understanding, and concert of action among Defendants, the substantial terns of which were to rig bids for, and to fix, stabilize, and maintain the prices of, Automotive Wire Harness Systems sold to automobile manufacturers in the United States and elsewhere.

**1.    Defendants Increased Prices for Automotive Wire Harness Systems Despite Steady Costs**

44.   In a market characterized by free and open competition, falling material and labor costs should lead to decreased prices because each firm competing in the market would expect that other competitors would attempt to take advantage of their lower costs to lower their prices in order to increase their market share.

45.   In a market where competitors are engaging in a price-fixing conspiracy, they do not

-23-

1   lower prices even when faced with decreasing input costs. Such price decreases are unnecessary
2   because the conspirators know that they will not lose market share as a result of price competition.

3        46.    The price of Automotive Wire Harness Systems substantially increased during the
4   Class Period, while significant input costs virtually remained the same. Copper is a major input cost
5   component in the manufacture of Automotive Wire Harness Systems. Sumitomo and Furukawa own
6   their own copper mines and effectively control their copper input costs. In a market characterized by
7   free and open competition, steady input costs should not result in rising prices.

8       **2.**    **The Structure and Characteristics of the Automotive Wire Harness Systems**
9   **Market Made Collusion Attractive**

10       47.    The structure and other characteristics of the market for Automotive Wire Harness
11  Systems are conducive to a price-fixing agreement, and have made collusion particularly attractive
12  in this market. The Automotive Wire Harness Systems market has the following characteristics
13  conducive to collusion: high barriers to entry, inelasticity of demand, high concentration, and
14  opportunities to conspire.

15       48.    The Automotive Wire Harness Systems market has high barriers to entry. A collusive
16  arrangement that raises product prices above competitive levels would, under basic economic
17  principles, attract new entrants seeking to benefit from the supra-competitive pricing.   Where,
18  however, there are significant barriers to entry, new entrants are less likely.  Thus, barriers to entry
19  help to facilitate the formation and maintenance of a price-fixing conspiracy.

20       49.    There are substantial barriers that preclude, reduce, or make more difficult entry into
21  the Automotive Wire Harness Systems market. A new entrant into the business would face costly
22  and lengthy start-up costs and other barriers, including multi-million dollar costs associated with
23  acquiring manufacturing plants and equipment, energy, transportation distribution infrastructure, and
24  skilled labor, and overcoming long-standing customer relationships.

25       50.    In addition, OEMs cannot easily shift demand among different Automotive Wire
26  Harness Systems suppliers after they select a supplier because the OEMs enter into multi-year
27  contracts with a supplier who specially designs the features of the Automotive Wire Harness
28  Systems to meet the requirements of their vehicles. The Automotive Wire Harness Systems an OEM

1 | purchases are integrated with the electronics, mechanics, thermal distribution, and other features of a
2 | particular vehicle model.

3 | 51. There is inelasticity of demand for Automotive Wire Harness Systems. "Elasticity" is
4 | a term used to describe the sensitivity of supply and demand to changes in one or the other. For
5 | example, demand is generally said to be "inelastic" if an increase in the price of a product does not
6 | materially affect demand, if any. In other words, customers have nowhere to turn for alternative,
7 | cheaper products of similar quality, and so continue to purchase despite a price increase.

8 | 52. For a cartel to profit from raising prices above competitive levels, demand must be
9 | relatively inelastic at competitive prices. Otherwise, increased prices would result in declining sales,
10 | revenues, and profits, as customers purchased substitute products or declined to buy altogether.
11 | Inelastic demand is a market characteristic that facilitates collusion, allowing producers to raise their
12 | prices without triggering customer substitution and lost revenue.

13 | 53. Demand for Automotive Wire Harness Systems is highly inelastic because there are
14 | no close substitutes for these products. In addition, purchasers or lessees of vehicles must purchase
15 | Automotive Wire Harness Systems as an essential part of their vehicles, even if the prices are raised
16 | or maintained at supra-competitive levels.

17 | 54. The market for Automotive Wire Harness Systems is highly concentrated.
18 | Defendants dominate the Automotive Wire Harness Systems market. Six of the Defendants control
19 | almost 90% of the global market, and four of the Defendants control almost 77% of the global
20 | market: Yazaki controls approximately 30%; Sumitomo controls approximately 24%; Delphi
21 | controls approximately 16.71%; Lear controls approximately 5%; Furukawa controls approximately
22 | 4%; and Leoni controls approximately 6%.

23 | 55. Defendants had ample opportunities to conspire. Defendants attended industry events
24 | where they had the opportunity to meet, have improper discussions under the guise of legitimate
25 | business contacts, and perform acts necessary for the formation, operation, and furtherance of the
26 | conspiracy. For example, Defendants have regularly attended the annual Detroit Auto Show, which
27 | provided the means and opportunity to form and further the conspiracy alleged herein.

28 | 3. **Government Investigations**

1    56.    A globally-coordinated antitrust investigation is underway in the United States,
2    Europe, and Japan aimed at suppliers of Automotive Wire Harness Systems. The DOJ has stated that
3    it is conducting an investigation of potential antitrust activity and coordinating its investigation with
4    antitrust regulators in Europe, DOJ Spokeswoman Gina Talamona stated: "The antitrust division is
5    investigating the possibility of anticompetitive cartel conduct of automotive electronic component
6    suppliers."

7    57.    On February 8, 2010, the Commission executed surprise raids at the European offices
8    of certain Defendants as part of an investigation into anti-competitive conduct related to the
9    manufacturing and sale of Automotive Wire Harness Systems. On June 7, 2010, the Commission
10   carried out additional raids at the European offices of several suppliers of Automotive Wire Harness
11   Systems. Specifically, Commission investigators raided the offices of Leoni, SY Systems, and
12   Yazaki. "The Commission has reason to believe that the companies concerned may have violated
13   European Union antitrust rules that prohibit cartels and restrictive business practices," a Commission
14   official said in a statement.

15   58.    Defendants S-Y Systems and Leoni have stated they are cooperating with the antitrust
16   investigators.

17   59.    Lear's Chief Executive Officer Robert Rossiter has stated that Lear was notified by
18   the Commission that it is part of an investigation into anticompetitive practices among automotive
19   electrical and electric component suppliers.

20   60.    Defendant Delphi has admitted to having "received a request for information from
21   antitrust authorities at the European Commission seeking information about conduct by us in
22   connection with an investigation in the European Union related to the electrical and electronic
23   components market." Delphi stated that it is cooperating fully with European competition
24   authorities.

25   61.    In February 2010, Japan's Fair Trade Commission raided the Tokyo offices of
26   Furukawa, Sumitomo, and Yazaki as part of an expansive investigation into collusion in the industry
27   dating back to at least 2003.

28   62.    On February 23, 2010, around the same time as the raids by the Japanese and

-26-

1  European competition authorities, investigators from the FBI raided three Detroit-area Japanese auto

2  parts makers as part of the DOJ's investigation. The FBI executed warrants and searched the offices

3  of these companies, including Yazaki's subsidiary in Canton Township, Michigan. Special Agent

4  Sandra Berchtold said the affidavits supporting issuance of the warrants were sealed in federal court.

5      63.    To obtain search warrants, the United States was legally required to demonstrate the

6  existence of probable cause, accepted by a federal jurist, to believe that it would obtain evidence of

7  an antitrust violation as a result of executing the search warrant. That belief, supported by affidavits

8  or testimony, must be grounded on reasonably trustworthy information.

9      **4.    Guilty Pleas**

10     64.    On September 29, 2011, the DOJ announced that Defendant Furukawa had agreed to

11 plead guilty and to pay a $200 million fine for its role in a criminal price-fixing and bid-rigging

12 conspiracy involving the sale of Automotive Wire Harness Systems to automobile manufacturers.

13 Three Furukawa executives, Tetsuya Ukai (Manager, Unit Chief, and General Manager in the Honda

14 Sales Division), Junichi Funi (Sales Representative and Manager of the Honda Sales Division), and

15 Hirotsugu Nagata (Marketing Manager and Chief Financial Officer) also agreed to plead guilty and

16 to be incarcerated in the United States for a year and a day to 18 months.

17     65.    On October 24, 2011, Junichi Funo and Hirotsugu Nagata lodged guilty pleas to one-

18 count felony charges brought by the DOJ. On November 10, 2011, Tetsuya Ukai pleaded guilty as

19 well.

20     66.    Junichi Funo was employed by Furukawa in Japan as a sales representative in the

21 Honda Sales Division from April 2003 until August 2003, and then by a subsidiary of Furukawa in

22 the United States as Assistant General Manager for Honda Sales from August 2003 until March

23 2009, and as Manager of the Honda Sales Division of Furukawa in Japan from March 2009 until at

24 least July 2009.

25     67.    Hirotsugu Nagata was employed by a subsidiary of Furukawa in the United States as

26 General Manager of Sales from January 2004 until November 2007, Marketing Manager from

27 January 2004 until March 2009, and Chief Financial Officer from January 2004 through at least

28 June 2009.

-27-

68.    Tetsuya Ukai was employed by Furukawa in the Honda Sales Division from April 2003 until July 2005, as Unit Chief in the Honda Sales Division from July 2005 until April 2007, and as General Manager of Honda Sales Division from April 2007 until at least July 2009.

69.    According to the information filed, Furukawa and its co-conspirators carried out the conspiracy by:

a.    Participating in meetings, conversations, and communications in the United States and Japan to discuss the bids and price quotations to be submitted to automobile manufacturers in the United States and elsewhere;

b.    Agreeing, during those meetings, conversations, and communications, on bids and price quotations to be submitted to automobile manufacturers in the United States and elsewhere;

c.    Agreeing, during those meetings, conversations, and communications, to allocate the supply of Automotive Wire Harness Systems sold to automobile manufacturers in the United States and elsewhere on a model-by-model basis;

d.    Agreeing, during those meetings, conversations, and communications, to coordinate price adjustments requested by automobile manufacturers in the United States and elsewhere;

e.    Submitting bids, price quotations, and price adjustments to automobile manufacturers in the United States and elsewhere in accordance with the agreements reached;

f.    Selling Automotive Wire Harness Systems to automobile manufacturers in the United States and elsewhere at collusive and noncompetitive prices;

g.    Accepting payment for Automotive Wire Harness Systems sold to automobile manufacturers in the United States and elsewhere at collusive and noncompetitive prices;

h.    Engaging in meetings, conversations, and communications in the United States and elsewhere for the purpose of monitoring and enforcing adherence to the agreed-upon bid-rigging and price-fixing scheme; and

i.    Employing measures to keep their conduct secret, including but not limited to using code names and meeting at private residences or remote locations.

-28-

**B.    Manner and Means of the Conspiracy**

70.    For purposes of forming and carrying out the charged combination and conspiracy, Defendants did those things that they combined and conspired to do, including, among other things:

a.    Participating in meetings, conversations, and communications in the United States and Japan to discuss the bids and price quotations to be submitted to automobile manufacturers in the United States and elsewhere;

b.    Agreeing, during those meetings, conversations, and communications, on bids and price quotations to be submitted to automobile manufacturers in the United States and elsewhere;

c.    Agreeing during those meetings, conversations, and communications, to allocate the supply of Automotive Wire Harness Systems sold to automobile manufacturers in the United States and elsewhere on a model-by-model basis;

d.    Agreeing, during those meetings, conversations, and communications, to coordinate price adjustments requested by automobile manufacturers in the United States and elsewhere;

e.    Submitting bids, price quotations, and price adjustments to automobile manufacturers in the United States and elsewhere in accordance with the agreements reached;

f.    Selling Automotive Wire Harness Systems to automobile manufacturers in the United States and elsewhere at collusive and noncompetitive prices;

g.    Accepting payment for Automotive Wire Harness Systems sold to automobile manufacturers in the United States and elsewhere at collusive and noncompetitive prices;

h.    Engaging in meetings, conversations, and communications in the United States and elsewhere for the purpose of monitoring and enforcing adherence to the agreed-upon bid-rigging and price-fixing scheme; and

i.    Employing measures to keep their conduct secret, including but not limited to using code names and meeting at private residences or remote locations.

**C.    Trade and Commerce**

71.    During the period covered by this Complaint, Defendants sold to automobile

-29-

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

1 manufacturers located in various states in the United States substantial quantities of Automotive
2 Wire Harness Systems shipped from outside the United States and from other states in a continuous
3 and uninterrupted flow of interstate and foreign trade and commerce. In addition, substantial
4 quantities of equipment and supplies necessary to the production and distribution of Automotive
5 Wire Harness Systems by Defendants, as well as payments for Automotive Wire Harness Systems
6 sold by Defendants, traveled in interstate and foreign trade and commerce. The business activities of
7 Defendants in connection with the production and sale of Automotive Wire Harness Systems that
8 were the subject of the charged conspiracy were within the flow of, and substantially affected,
9 interstate and foreign trade and commerce.

10 **D.    The Pass-Through of the Overcharges to Consumers**

11       72.    Defendants' conspiracy to rig bids for, and raise, fix, or maintain the price of Wire
12 Harness Systems at artificial levels resulted in harm to Plaintiff and the indirect-purchaser consumer
13 classes alleged herein because it resulted in their paying higher prices for new motor vehicles
14 containing Wire Harness Systems and/or for replacement Wire Harness Systems than they would
15 have paid in the absence of Defendants' conspiracy. Sharis Pozen of the U.S. DOJ has stated that
16 U.S. consumers were affected by the conspiracy.

17       73.    Once a Wire Harness System leaves its place of manufacture, it remains essentially
18 unchanged as it moves through the distribution system. Wire Harness Systems are identifiable,
19 discrete physical objects that do not change form or become an indistinguishable part of new motor
20 vehicles in which they are contained.

21       74.    Wire Harness Systems follow a traceable physical chain from the defendants to
22 OEMs to purchasers of new motor vehicles containing Wire Harness Systems.

23       75.    Just as Wire Harness Systems can be physically traced through the supply chain, so
24 can their price be traced to show that changes in the prices paid by direct purchasers of Wire Harness
25 Systems affect prices paid by indirect purchasers of new motor vehicles containing Wire Harness
26 Systems.

27       76.    Because defendants control the market for Wire Harness Systems, there are virtually
28 no choices for persons and businesses that require new motor vehicles containing Wire Harness

-30-

1  Systems other than buying such products manufactured by a direct purchaser that paid supra-
2  competitive prices for Wire Harness Systems to defendants because of defendants' conspiracy
3  alleged herein.

4  77.  When distribution markets are highly competitive, as they are in the case of new
5  motor vehicles containing Wire Harness Systems as components, all of the overcharge will be
6  passed through to ultimate consumers, such as the indirect-purchaser plaintiff and class members.

7  78.  Hence, the inflated prices of new motor vehicles containing Wire Harness Systems
8  resulting from defendants' bid rigging and price-fixing conspiracy have been passed on to plaintiff
9  and the other class members by OEMs and dealers.

10  79.  The economic and legal literature has recognized that unlawful overcharges in a
11  component normally result in higher prices for products containing that price-fixed component. Two
12  antitrust scholars - Professors Robert G. Harris (Professor Emeritus and former Chair of the Business
13  and Public Policy Group at the Haas School of Business at the University of California at Berkeley)
14  and the late Lawrence A. Sullivan (Professor of Law Emeritus at Southwestern Law School and
15  author of the Handbook of the Law of Antitrust) - have observed that "in a multiple-level chain of
16  distribution, passing on monopoly overcharges is not the exception: it is the rule."

17  80.  As Professor Jeffrey K. McKie-Mason (Arthur W. Burks Professor for Information
18  and Computer Science and Professor of Economics and Public Policy at the University of
19  Michigan), an expert who presented evidence in a number of the indirect purchaser cases involving
20  Microsoft Corporation, said (in a passage quoted in the judicial decision in that case granting class
21  certification): "As is well known in economic theory and practice, at least some of the overcharge
22  will be passed on by distributors to end consumers. When the distribution markets are highly
23  competitive, as they are here, all or nearly the entire overcharge will be passed on through to
24  ultimate consumers... Both of Microsoft's experts also agree upon the economic phenomenon of
25  cost pass through, and how it works in competitive markets. This general phenomenon of cost pass
26  through is well established in antitrust laws and economics as well."

27  81.  The purpose of the conspiratorial conduct of the defendants was to raise, fix or
28  stabilize the price of Wire Harness Systems and, as a direct and foreseeable result, new motor

1  vehicles containing such systems. Economists have developed techniques to isolate and understand

2  the relationship between one "explanatory" variable and a "dependent" variable in those cases when

3  changes in dependent variable are explained by changes in a multitude of variables -- when all such

4  variables may be changing simultaneously. That analysis - called regression analysis - is commonly

5  used in the real world and in litigation to determine the impact of a price increase on one cost in a

6  product (or service) that is an assemblage of costs. Thus, it is possible to isolate and identify only

7  the impact of an increase in the price of Wire Harness Systems on prices for new motor vehicles

8  even though such products contain a number of other components whose prices may be changing

9  over time. A regression model can explain how variation in the price of Wire Harness Systems

10  affects changes in the price of new motor vehicles. In such models, rather than being treated as the

11  dependent variable, the price of Wire Harness Systems is treated as an independent or explanatory

12  variable. The model can isolate how changes in the price of Wire Harness Systems impact the price

13  of new motor vehicles containing such systems while controlling for the impact of other price-

14  determining factors.

15       82.    Economic and legal literature recognizes that the more pricing decisions are based on

16  cost, the easer it is to determine the pass-through rate. The directness of affected costs refers to

17  whether an overcharge affects a direct (i.e. variable) cost or an indirect (i.e., overhead) cost.

18  Overcharges will be passed-through sooner and at a higher rate if the overcharge affects direct costs.

19  Here, Wire Harness Systems are a direct (and significant) cost of new motor vehicles containing

20  such systems.

21       83.    Other factors that lead to the pass-through of overcharges include: (i) whether price

22  changes are frequent; (ii) the duration of the anti-competitive overcharge; (iii) whether pricing

23  decisions are based on cost; and (iv) whether the overcharge affects variable, as opposed to

24  overhead, costs. All of these factors were present in the Wire Harness Systems market during the

25  Class Period. The precise amount of such an impact on the prices of new motor vehicles containing

26  Wire Harness Systems can be measured and quantified. Commonly used and well-accepted

27  economic models can be used to measure both the extent and the amount of the supra-competitive

28  charge passed through the chain of distribution.

1    84.    Plaintiff and other indirect purchasers have been forced to pay supra-competitive
2    prices for new motor vehicles containing Wire Harness Systems. These inflated prices have been
3    passed on to them by OEMs and dealers. Those overcharges have unjustly enriched defendants.

**FRAUDULENT CONCEALMENT**

5    85.    Plaintiff and members of the Class did not discover and could not discover through
6    the exercise of reasonable diligence, the existence of the conspiracy alleged herein until after
7    September 29, 2011, when the investigations by the DOJ became public, because Defendants and
8    their Co-Conspirators actively and fraudulently concealed the existence of their contract
9    combination, and conspiracy.

10    86.    Because Defendants' agreements, understandings, and conspiracies were kept secret
11    until September 29, 2011, Plaintiff and members of the Class before that time were unaware of
12    Defendants' unlawful conduct alleged herein, and they did not know before that time that they were
13    paying artificially high prices for Automotive Wire Harness Systems and the products in which they
14    were used.

15    87.    The affirmative acts of the Defendants alleged herein, including acts in furtherance of
16    the conspiracy, were wrongfully concealed and carried out in a manner that precluded detection.

17    88.    By their very nature, Defendants' price fixing conspiracy was inherently self-
18    concealing.    As alleged above, Defendants had secret discussions about price and output.
19    Defendants employed means to keep their conduct secret, including using code names and meeting
20    at private residences or in remote locations.

21    89.    In the context of the circumstances surrounding Defendants' pricing practices,
22    Defendants' acts of concealment were more than sufficient to preclude suspicion by a reasonable
23    person that Defendants' pricing was conspiratorial.    Accordingly, a reasonable person under the
24    circumstances would not have been alerted to investigate the legitimacy of Defendants' Automotive
25    Wire Harness Systems prices before September 29, 2011.

26    90.    Plaintiff and members of the Class could not have discovered the alleged contract,
27    conspiracy, or combination at an earlier date by the exercise of reasonable diligence because of the
28    deceptive practices and techniques of secrecy employed by the Defendants and their co-conspirators

1   to avoid detection of, and fraudulently conceal, their contract, combination or conspiracy.

2       91.     As a result of Defendants' fraudulent concealment of their conspiracy, the running of

3   any statute of limitations has been tolled with respect to any claims that Plaintiff and members of the

4   Class have as a result of the anticompetitive conduct alleged in this Complaint.

5   **VIOLATIONS ALLEGED**

6   **First Claim for Relief**

7   **(Violation of Section 1 of the Sherman Act)**

8       92.     Plaintiff incorporates and realleges, as though fully set forth herein, each and every

9   allegation set forth in the preceding paragraphs of this Complaint.

10       93.     Beginning at a time presently unknown to Plaintiff, but at least as early as January 1,

11   2000, and continuing through the present, Defendants and their co-conspirators entered into a

12   continuing agreement, understanding, and conspiracy in restraint of trade to artificially rig bids and

13   raise, fix, maintain, and/or stabilize prices for Automotive Wire Harness Systems in the United

14   States, in violation of Section 1 of the Sherman Act, 15 U.S.C. §1.

15       94.     The contract, combination, or conspiracy among Defendants consisted of a continuing

16   agreement, understanding, and concert of action among Defendants, their agents and/or co-

17   conspirators, the substantial terms of which were to agree to fix the prices of Automotive Wire

18   Harness Systems.

19       95.     In formulating and carrying out the alleged agreement, understanding, and

20   conspiracy, the Defendants and their co-conspirators did those things that they combined and

21   conspired to do, including but not limited to the acts, practices, and course of conduct set forth

22   above, and the following, among others:

23           1.     Fixing, raising, stabilizing, and pegging the price of Automotive Wire Harness

24              Systems;

25           2.     Submitting rigged bids for the award and performance of certain Automotive

26              Wire Harness Systems contracts;

27           3.     Allocating among themselves markets for Automotive Wire Harness Systems;

28              and

-34-

1          4.      Allocating among themselves and collusively reducing the production of
2                  Automotive Wire Harness Systems.

3      96.    The combination and conspiracy alleged herein has had the following effects, among
4  others:

5          1.      Price competition in the sale of Automotive Wire Harness Systems has been
6                  restrained, suppressed, and/or eliminated in the United States;

7          2.      Prices for Automotive Wire Harness Systems sold by Defendants and their co-
8                  conspirators have been fixed, raised, maintained and stabilized at artificially
9                  high, non-competitive levels throughout the United States; and

10         3.      Those who purchased Automotive Wire Harness Systems directly or
11                 indirectly from Defendants and their co-conspirators have been deprived of
12                 the benefits of free and open competition.

13     97.    Plaintiff and the other class members have been injured and will continue to be
14  injured in their business and property by paying more for Automotive Wire Harness Systems
15  purchased indirectly from the Defendants and their co-conspirators, including paying more for the
16  purchase or lease of new motor vehicles, than they would have paid and will pay in the absence of
17  the combination and conspiracy.

18     98.    Plaintiff and the class are entitled to an injunction against Defendants, preventing and
19  restraining the violations alleged herein.

20                                  **Second Claim for Relief**

21                              **(Violation of State Antitrust Laws)**

22     99.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every
23  allegation set forth in the preceding paragraphs of this Complaint.

24     100.   By reason of the foregoing, Defendants have entered into agreements in restraint of
25  trade in violation of Arizona Revised Stat. §§44-1401 *et seq.*

26     101.   By reason of the foregoing, Defendants have entered into agreements in restraint of
27  trade in violation of California Bus. & Prof. Code §§16700 *et seq.*

28     102.   By reason of the foregoing, Defendants have entered into agreements in restraint of

-35-

1 | trade in violation of District of Columbia Code Ann. §§28-4501 *et seq.*

2   103.   By reason of the foregoing, Defendants have entered into agreements in restraint of
3 | trade in violation of Hawaii Code, H.R.S. §§ 480-1, *et seq.*

4   104.   By reason of the foregoing, Defendants have entered into agreements in restraint of
5 | trade in violation of Iowa Code §§553.1 *et seq.*

6   105.   By reason of the foregoing, Defendants have entered into agreements in restraint of
7 | trade in violation of Kansas Stat. Ann. §§50-101 *et seq.*

8   106.   By reason of the foregoing, Defendants have entered into agreements in restraint of
9 | trade in violation of Maine Rev. Stat. Ann. 10, §§1101 *et seq.*

10   107.   By reason of the foregoing, Defendants have entered into agreements in restraint of
11 | trade in violation of Michigan Comp. Laws. Ann. §§445.771 *et seq.*

12   108.   By reason of the foregoing, Defendants have entered into agreements in restraint of
13 | trade in violation of Minnesota Stat. §§325D.49 *et seq.*

14   109.   By reason of the foregoing, Defendants have entered into agreements in restraint of
15 | trade in violation of Mississippi Code Ann. §75-21-1 *et seq.*

16   110.   By reason of the foregoing, Defendants have entered into agreements in restraint of
17 | trade in violation of Nevada Rev. Stat. Ann. §§598A.010 *et seq.*

18   111.   By reason of the foregoing, Defendants have entered into agreements in restraint of
19 | trade in violation of New Mexico Stat. Ann. §§57-1-1 *et seq.*

20   112.   By reason of the foregoing, Defendants have entered into agreements in restraint of
21 | trade in violation of North Carolina Gen. Stat. §75-1 *et seq.*

22   113.   By reason of the foregoing, Defendants have entered into agreements in restraint of
23 | trade in violation of North Dakota Cent. Code §§51-08.1-01 *et seq.*

24   114.   By reason of the foregoing, Defendants have entered into agreements in restraint of
25 | trade in violation of the Oregon Revised Statutes §§ 646.705 *et seq.*

26   115.   By reason of the foregoing, Defendants have entered into agreements in restraint of
27 | trade in violation of South Dakota Codified Laws Ann. §§37-1-3.1 *et seq.*

28   116.   By reason of the foregoing, Defendants have entered into agreements in restraint of

-36-

1   trade in violation of Tennessee Code Ann. §§47-25-101 *et seq.*

2       117.    By reason of the foregoing, Defendants have entered into agreements in restraint of

3   trade in violation of Vermont Stat. Ann. Title 9, §§2451 *et seq*

4       118.    By reason of the foregoing, Defendants have entered into agreements in restraint of

5   trade in violation of West Virginia §§47-18-1 *et seq.*

6       119.    By reason of the foregoing, Defendants have entered into agreements in restraint of

7   trade in violation of Wisconsin Stat. §§133.01 *et seq.*

8       120.    Class Members in each of the states listed above paid supra-competitive, artificially

9   inflated prices for Automotive Wire Harness Systems.   As a direct and proximate result of

10  Defendants' unlawful conduct, such members of the Class have been injured in their business and

11  property in that they paid more for Automotive Wire Harness Systems than they otherwise would

12  have paid in the absence of Defendants' unlawful conduct.

13      121.    As a result of Defendants' violations of the statutes set forth, Class members seek

14  damages and costs of suit, including reasonable attorneys' fees.

15                              **Third Claim for Relief**

16          **(Violation of State Consumer Protection and Unfair Competition Laws)**

17      122.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every

18  allegation set forth in the preceding paragraphs of this Complaint.

19      123.    Defendants engaged in unfair competition or unfair, unconscionable, deceptive or

20  fraudulent acts or practices in violation of the state consumer protection and unfair competition

21  statutes listed below.

22      124.    Defendants have engaged in unfair competition or unfair or deceptive acts or

23  practices in violation of California Bus. & Prof. Code §§ 17200 *et seq.*

24      125.    Defendants have engaged in unfair competition or unconscionable, unfair or

25  deceptive acts or practices in violation of District of Columbia Code §§ 28-3901 *et seq.*

26      126.    Defendants have engaged in unfair competition or unconscionable, unfair or

27  deceptive acts or practices in violation of Florida Stat. §§ 501.201 *et seq.*

28      127.    Defendants have engaged in unfair competition or unfair or deceptive acts or

                                        -37-

1   practices in violation of Hawaii Revised Stat. §§ 480 *et seq.*

2       128.   Defendants have engaged in unfair competition or unfair or deceptive acts or

3   practices in violation of Massachusetts General Laws, Chapter 93A, §§ 1 *et seq.*

4       129.   Defendants have engaged in unfair  competition or unfair or deceptive acts or

5   practices in violation of Missouri Revised Statutes Code §§ 407.020 *et seq.*

6       130.   Defendants have engaged in unfair competition or unconscionable, unfair or

7   deceptive acts or practices in violation of New Mexico Stat. §§ 57-12-1 *et seq.*

8       131.   Defendants have engaged in unfair competition or unfair or deceptive acts or

9   practices in violation of New York Gen. Bus. Law §§ 349 *et seq.*  Specifically:

10          1.   Defendants engaged in commerce in New York;

11          2.   Defendants and their co-conspirators secretly agreed to raise prices for

12               Automotive Wire Harness Systems sold to customers located in New York

13               and through artificial supply restraints on the entire Automotive Wire Harness

14               Systems market;

15          3.   New York consumers were targets of the conspiracy;

16          4.   The secret agreements were not known to New York consumers;

17          5.   Defendants made public statements about the price of Automotive Wire

18               Harness Systems that Defendants knew would be seen by New York

19               consumers; such statements either omitted material information that rendered

20               the statements that they made materially misleading or affirmatively

21               misrepresented the real cause of price increases for Automotive Wire Harness

22               Systems; and Defendants alone possessed material information that was

23               relevant to consumers, but failed to provide the information;

24          6.   Because of Defendants' unlawful trade practices in the State of New York,

25               there was a broad impact on New York consumer class members who

26               indirectly purchased Automotive Wire Harness Systems; and consumer class

27               members have been injured because they have paid more for Automotive

28               Wire Harness Systems than they would have paid in the absence of

-38-

1    Defendants' unlawful trade acts and practices

2    7.    Because of Defendants' unlawful trade practices in the State of New York,
3          New York consumer class members who indirectly purchased Automotive
4          Wire Harness Systems were misled to believe that they were paying a fair
5          price for Automotive Wire Harness Systems or the price increases for
6          Automotive Wire Harness Systems were for valid business reasons; and
7          similarly situated consumers were potentially affected by Defendants'
8          conduct;

9    8.    Defendants knew that their unlawful trade practices with respect to pricing
10         Automotive Wire Harness Systems would have an impact on New York
11         consumers and not just the Defendants' direct customers;

12   9.    Defendants knew that their unlawful trade practices with respect to pricing
13         Automotive Wire Harness Systems would have a broad impact, causing
14         consumer class members who indirectly purchased Automotive Wire Harness
15         Systems to be injured by paying more for Automotive Wire Harness Systems
16         than they would have paid in the absence of Defendants' unlawful trade acts
17         and practices;

18   10.   Defendants' consumer-oriented violations adversely affected the public
19         interest in the State of New York..

20   132.  Defendants have engaged in unfair competition or unconscionable, unfair or
21   deceptive acts or practices in violation of North Carolina Gen. Stat. §§ 75-1.1 *et seq.*

22   133.  Defendants have engaged in unfair competition or unfair or deceptive acts or
23   practices in violation of Rhode Island Gen. Laws. §§ 6-13.1-1 *et seq.* Specifically:

24   1.    Defendants engaged in commerce in Rhode Island;

25   2.    Defendants and their co-conspirators unscrupulously and secretly agreed to
26         raise Automotive Wire Harness Systems prices by direct agreement on prices
27         Defendants charged Defendants' customers located in Rhode Island;

28   3.    The secret agreements were not known to Rhode Island natural persons who

-39-

indirectly purchased Automotive Wire Harness Systems primarily for personal, family or household purposes;

4. Defendants made public statements that Defendants knew would be seen by Rhode Island natural persons who indirectly purchased Automotive Wire Harness Systems primarily for personal, family or household purposes; such statements created a likelihood of confusion or misunderstanding with respect to the real reasons that the prices of Automotive Wire Harness Systems were rising; and such statements either omitted material information that rendered the statements that they made materially misleading and confusing, or affirmatively deceived such consumers about the real cause of price increases for Automotive Wire Harness Systems;

5. Because of Defendants' unlawful and unscrupulous trade practices in Rhode Island, natural persons in Rhode Island who indirectly purchased Automotive Wire Harness Systems primarily for personal, family or household purposes were misled or deceived to believe that they were paying a fair price for Automotive Wire Harness Systems or the price increases for Automotive Wire Harness Systems were for valid business reasons;

6. Natural persons who indirectly purchased Automotive Wire Harness Systems primarily for personal, family or household purposes have been injured because they have paid more for Automotive Wire Harness Systems than they would have paid in the absence of Defendants' unlawful and unscrupulous trade acts and practices;

7. Defendants knew that their unscrupulous and unlawful trade practices with respect to pricing Automotive Wire Harness Systems would have an impact on Rhode Island natural persons who indirectly purchased Automotive Wire Harness Systems primarily for personal, family or household purposes and not just the Defendants' direct customers;

8. Defendants knew that their violations with respect to pricing Automotive Wire

1       Harness Systems would have a broad impact, causing natural persons who

2       indirectly purchased Automotive Wire Harness Systems primarily for

3       personal, family or household purposes to be injured by paying more for

4       Automotive Wire Harness Systems than they would have paid in the absence

5       of Defendants' unlawful trade acts and practices;

6              9.      Defendants' violations adversely affected public policy in Rhode Island..

7       134.    Defendants have engaged in unfair competition or unfair or deceptive acts or

8    practices in violation of Vermont Stat., Title 9, §§ 2451 *et seq.*

9       135.    Class Members in the states listed above paid supra-competitive, artificially inflated

10   prices for Automotive Wire Harness Systems.  As a direct and proximate result of Defendants'

11   unlawful conduct, Plaintiff and the members of the Class have been injured in their business and

12   property in that they paid more for Automotive Wire Harness Systems than they otherwise would

13   have paid in the absence of Defendants' unlawful conduct.

14      136.    As a result of Defendants' violations of the laws listed above, the members of the

15   Class in the states listed above are entitled to equitable relief including restitution and/or

16   disgorgement of all revenues, earnings, profits, compensation and benefits which may have been

17   obtained by Defendants as a result of such business practices, including compensable damages under

18   New York law, and damages wherever else allowed by law.

19                                   **Fourth Claim for Relief**

20                          **(Unjust Enrichment and Disgorgement of Profits)**

21      137.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every

22   allegation set forth in the preceding paragraphs of this Complaint.

23      138.    Defendants have been unjustly enriched through overpayments by Plaintiff and Class

24   members and the resulting profits enjoyed by Defendants as a direct result of such overpayments.

25   Plaintiff's and Class members' detriment and Defendants' enrichment were related to and flowed

26   from the conduct challenged in this Complaint.

27      139.    Under common law principles of unjust enrichment, Defendants should not be

28   permitted to retain the benefits conferred via overpayments by Plaintiff and Class members.

-41-

140.    Plaintiff and members of the following Indirect-Purchaser State Classes seek disgorgement of all profits resulting from such overpayments and establishment of a constructive trust from which Plaintiff and Class members may seek restitution:

1.   Arizona Indirect-Purchaser Class;

2.   California Indirect-Purchaser Class;

3.   District of Columbia Indirect-Purchaser Class;

4.   Hawaii Indirect-Purchaser Class;

5.   Iowa Indirect-Purchaser Class;

6.   Kansas Indirect-Purchaser Class;

7.   Maine Indirect-Purchaser Class;

8.   Massachusetts Indirect-Purchaser Class;

9.   Michigan Indirect-Purchaser Class;

10.  Minnesota Indirect-Purchaser Class;

11.  Mississippi Indirect-Purchaser Class;

12.  Missouri Indirect-Purchaser Class:

13.  Nevada Indirect-Purchaser Class;

14.  New Hampshire Indirect-Purchaser Class;

15.  New Mexico Indirect-Purchaser Class;

16.  New York Indirect-Purchaser Class;

17.  North Carolina Indirect-Purchaser Class;

18.  Oregon Indirect-Purchaser Class;

19.  Rhode Island Indirect-Purchaser Class;

20.  South Dakota Indirect-Purchaser Class;

21.  Tennessee Indirect-Purchaser Class;

22.  Vermont Indirect-Purchaser Class;

23.  West Virginia Indirect-Purchaser Class; and

24.  Wisconsin Indirect-Purchaser Class.

-42-

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays:

A.      That the Court determine that the claims alleged herein under the Sherman Act, state antitrust laws, and  state consumer protection and/or unfair competition laws may be maintained as a class action under Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, as informed by the respective state class action laws;

B.      That the unlawful agreement, conduct, contract, conspiracy or combination alleged herein be adjudged and decreed to be:

       1.      A restraint of trade or commerce in violation of Section 1 of the Sherman Act, as alleged in the First Claim for Relief;

       2.      An unlawful combination, trust, agreement, understanding, and/or concert of action in violation of the state antitrust laws identified in the Second Claim for Relief herein;

       3.      Violations of the state consumer protection and unfair competition laws identified in the Third Claim for Relief herein; and

       4.      Acts of unjust enrichment as alleged in the Fourth Claim for Relief herein.

C.      That Plaintiff and the class members alleged herein recover damages, as provided by federal and state antitrust laws, and that a judgment be entered in favor of Plaintiff and the relevant Class members against the Defendants, jointly and severally, in an amount to be trebled in accordance with such laws.

D.      That Plaintiff and the relevant Class members obtain any penalties, punitive or exemplary damages, and/or full consideration, where the laws of the respective states identified herein so permit;

E.      That Plaintiff and the relevant Class members recover damages and/or all other available monetary and equitable remedies under the state unfair competition laws identified above;

F.      That Defendants, their affiliates, successors, transferees, assignees, and the officers, directors, partners, agents, and employees thereof, and all other persons acting or claiming

-43-

1   to act on their behalf, be permanently enjoined and restrained from in any manner continuing,

2   maintaining, or renewing the conduct, contract, conspiracy or combination alleged herein, or from

3   entering into any other conspiracy alleged herein, or from entering into any other contract,

4   conspiracy or combination having a similar purpose or effect, and from adopting or following any

5   practice, plan, program, or device having a similar purpose or effect;

6           G.      That Plaintiff and class members be awarded restitution, including

7   disgorgement of profits obtained by Defendants as a result of their acts of unfair competition and

8   acts of unjust enrichment;

9           H.      That Plaintiff and class members be awarded pre- and post-judgment interest,

10  and that that interest be awarded at the highest legal rate from and after the date of service of the

11  initial complaint in this action;

12          I.      That Plaintiff and class members recover their costs of this suit, including

13  reasonable attorneys' fees as provided by law; and

14          J.      That Plaintiff and class members have such other, further, and different relief

15  as the case may require and the Court may deem just and proper under the circumstances.

16

Dated: February 21, 2012                          Respectfully submitted,

17

18                                                _____
                                                  Terry Gross
19                                                Adam C. Belsky
                                                  Sarah Crowley
20                                                GROSS BELSKY ALONSO LLP
                                                  One Sansome Street, Suite 3670
21                                                San Francisco, CA 94104
                                                  Telephone: (415) 544-0200
22                                                Facsimile: (415) 544-0201

23

24

25

26

27

28

-44-

1

## JURY TRIAL DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury for all issues so triable.

Dated: February 21, 2012

Terry Gross
Adam C. Belsky
Sarah Crowley
GROSS BELSKY ALONSO LLP
One Sansome Street, Suite 3670
San Francisco, CA 94104
Telephone: (415) 544-0200
Facsimile: (415) 544-0201

-45-